UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES GARTLY,

                                                    **Case No.:**

                        **Plaintiff,**
           **-against-**

SELIP & STYLIANOU, LLP f/k/a COHEN & SLAMOWITZ, LLP and
DISCOVER BANK

                        **Defendants.**
------------------------------------------------------------------X

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff James Gartly brings suit against Defendant SELIP & STYLIANOU, LLP f/k/a COHEN & SLAMOWITZ, LLP for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq*, and N.Y. Jud. § 487, and against DISCOVER BANK for its violations of N.Y. Gen. Bus. Law § 349 *et seq*, and in support would show as follows.

## SUMMARY OF CLAIMS[1]

Defendants are a debt collection law firm, Selip & Stylianou, LLP f/k/a Cohen & Slamowitz, LLP ("Selip"), and a putative creditor Discover Bank ("Discover"). In 2008, Discover Bank, through Selip, filed suit to collect a known time-barred debt in violation of N.Y. Gen. Bus. Law § 349 and, for Selip, in violation of Judiciary Law 487.

The complaint was served via "nail and mail," that is, posting on the door of the place of residence and mailing a duplicate copy. As it turns out, the suit was posted to the door of an address that Mr. Gartly had not lived for many years. Defendants obtained default judgment as

---

1 This summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

Mr. Gartly had no notice of the collection lawsuit.

Nearly 10 years later, Mr. Gartly receives a notice of garnishment, and promptly files an Order to Show Cause ("OSC") on March 31, 2017 staying collections until a ruling on Mr. Gartly's request to vacate the default judgment, and setting a hearing for the same. During the pendancy of the OSC Stay, Selip causes Levy and Income Execution on to be served Mr. Gartly's employers, and also mails information subpoenas to the employers. Selip violated the FDCPA by continuing collections during the pendency of the OSC Stay. Selip also violated the FDCPA and GBL 349 by seeking to collect from Mr. Gartly by falsely threatening his employers that they may be held in contempt if they failed to promptly answer (defectively served) information subpoenas.

Selip also violated the FDCPA and Judiciary Law 487 by forcing Mr. Gartly to go to an additional three court hearings after Selip had overwhelming evidence that the Mr. Gartly did not in fact live at the address upon which the affidavit of service was predicated. Selip continued to oppose the OSC without basis for the purpose of attempting to grind Mr. Gartly down with repeated continued collection attempts during the OSC stay and with multiple hearings, to coerce Mr. Gartly into paying or in hopes Mr. Gartly would miss one of the multiple hearings.

Selip also violated the FDCPA, GBL 349, and Judiciary Law 487 by making a demand for expenses and costs in opposing legitimate orders to show cause when Selip had no basis in law or fact to recover the same. Selip makes this boilerplate, baseless demand for expenses and costs in order to dissuade consumers from pursuing their meritorious orders to show cause.

## A.   JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit because the action arises

under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claim within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.      Venue in this District is proper because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Queens County, New York.

## B.    PARTIES

3.      Plaintiff James Gartly ("Mr. Gartly" or "Plaintiff") is an individual residing in Kings County, New York.

4.      Defendant Selip & Stylianou, LLP f/k/a Cohen & Slamowitz is a New York debt collection law firm that has its principle place of business in Woodbury, New York.

5.      Selip & Stylianou regularly collects or attempts to collect, directly or indirectly, debts owed, or due or asserted to be due another by filing thousands of collection lawsuits, collecting on thousands of putative judgments, and sending thousands of collection letters. Selip & Stylianou, is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

6.      Defendant Discover Bank is a foreign business corporation organized under the laws of the State of Delaware. Discover regularly transacts business in the State of New York.

## C.   STATEMENT OF FACTS

**Defendants filed a litigated a lawsuit to collect a time-barred putative debt.**

7.      On February 11, 2008, Discover, through its attorney Selip, initiated a lawsuit against Mr.

3

Gartly in Queens County Civil Court, styled *Discover Bank v. James B. Gartly*, Case No.: CV-015865-08/QU ("collection suit"). ***See* Exh A (complaint).**

8.      The collection lawsuit is time-barred on its face because it was filed more than three years from the date of the accrual of the cause of action on the putative credit card account.

9.      The complaint demands payment in "the sum of $3,023.98 with interest from November 30, 2004."  The complaint was filed on February 11, 2008, three years and two months from the date the complaint sought prejudgment interest for the alleged breach of the credit card agreement.[2]

10.     Under New York's "borrowing statute," CPLR 202, when a nonresident sues in New York on a cause of action accruing outside New York, the action "cannot be commenced" unless the action is within the statute of limitations of both New York and the jurisdiction where the cause of action accrued.  *Portfolio Recovery Assoc., LLC v. King*, 927 N.E.2d 1059, 1061-62 (N.Y. 2010), *citing Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).

11.     When a purported creditor contends it suffered an economic harm for a breach of an alleged credit card agreement, the creditor's cause of action "accrues where the plaintiff resides and sustains the economic impact of the loss."  *Id.* (internal quotes omitted).

12.     Discover has its main office, as set forth in its articles of association,[3] in Delaware, and has its principal place of business in Delaware. This has been true from the date of the alleged default of the account to present.

13.     Therefore, Discover's cause of action for breach of the putative credit card agreement

---

2 Indeed, the debt was actually time-barred by an additional 6 months.  Under standard accounting practices, a credit card company "charges off" an account 6 months after the consumer defaults. The standard debt collection practice is to seek pre-judgment interest either from the date of charge off or the date of the filing of the collection action. Therefore, Discover's credit card lawsuit was filed 3 years 8 months from the date of the accrual of the action regarding the alleged debt, 8 months past the expiration of the statute of limitations.

3  Corporations have articles of incorporation and a state of incorporation. National banks do not. Instead, national banks designate a state for its "main office" in their "articles of association."

accrued in Delaware.

14.     The statute of limitations in Delaware for breach of credit contract is three years. Del. Code Ann., Tit. 10, § 8106; *Portfolio Recovery Assoc., LLC v. King*, 927 N.E.2d at 1060.

15.     By filing, serving, and continuing to litigate time-barred collection lawsuits, Defendants falsely represent to consumers including Mr. Gartly, and to the Court, that their lawsuit has merit when in fact the claim is barred by the statute of limitations. Defendants misrepresent that the lawsuits are timely filed in order to deceive consumers into believing that the suits cannot be challenged on limitations grounds, that any attempt to challenge the lawsuit on limitations grounds would be futile, and that the consumer should not challenge the suit in court but instead pay the amount demanded. Moreover, the purpose of these misrepresentations is to deceive the civil court into entering judgment on time barred claims, and awarding costs of court when the judgment creditors are not so entitled.

16.     This conduct is even more pernicious as Discover Bank certainly knows — and the consumer being sued almost certainly does not know — that its home office under its articles of association, and its principal place of business, are in Delaware.  Indeed, in *Portfolio Recovery Associates* at 415, the Court of Appeals specifically held that Discover Bank credit card accounts were governed by Delaware's three year statute of limitations for this very reason.

17.     In filing, serving, and continuing to litigate the time-barred lawsuit, Defendants represented that represented that Selip had performed a had performed a meaningful attorney review of Mr. Gartly's account and determined, based on professional attorney judgment, that the lawsuit was timely.

18.     Indeed Selip makes an express representation of meaningful attorney review by expressly representing in the complaint that "THE UNDERSIGNED ATTORNEY" had conducted an

"INQUIRY REASONABLE UNDER THE CIRCUMSTANCES" prior to filing the action.

19.    If the Selip attorney who signed the complaint had performed a meaningful attorney

review, she would have, at a minimum, established the governing statute of limitations period by

checking in what state the putative original creditor resides, what the governing statue of

limitations is in that state, and whether the putative debt is outside that state's statute of

limitations. Either Selip failed to perform a meaningful attorney review — despite its implied

and express representations that it had — or it had performed the meaningful attorney review,

realized the debt was time barred, but yet filed, served, and continued to litigate the case,

including opposing an order to show cause to vacated a judgment on a time barred putative debt.

### Gartly's claims against Defendants for filing a time barred lawsuit are tolled

20.    Gartly's claims against Defendants for filing, serving, and litigating a time barred

collection lawsuit are tolled because Mr. Gartly was never served the summons and complaint

and did not know about the collection lawsuits (or the resulting default judgment) until almost a

decade later when he received a notice Defendants were threatening to garnish his wages.

21.    According to the affidavit of service, the summons and complaint were served on Mr.

Gartly on or about February 14, 2008.

22.    Importantly, the affidavit of service contends that an address in Queens was the actual

place of residence of Mr. Gartly on the date of service in 2008. Therefore, the process server

effected service by so-called "nail and mail," affixing a copy of the summons and complaint on

the door and mailing a copy to the same address. As it turns out, Mr. Gartly did not live at that in

Queens in 2008, and indeed not since 2003. As Mr. Gartly had no notice of the collection

lawsuit, Selip, on behalf of Discover, entered a default judgment against Mr. Gartly on or about

May 6, 2008.[4]

## Defendants' seek to garnish Mr. Gartly's wages

23.    Nearly a decade later, on or about March 29, 2017 Mr. Gartly received a Notice of

Garnishment from New York City Marshal Ronald Moses. Enclosed with the Notice were two

Information Subpoenas directed toward Mr. Gartly's employers, Rose's Bar and Grill and Canal

Bar.

## Mr. Gartly files an Order to Show Cause to stay collections and vacate the default judgment

24.    Mr. Gartly was alarmed at the prospect of Defendants contacting his employers to state

that he owed a judgment, and to begin garnishing his wages. Mr. Gartly is a manager at a bar,

and is in charge of handling significant amounts of cash. He is entrusted with "closing," and

being entrusted with the proceeds for the evening. Mr. Gartly was afraid he would lose his job

because he was afraid his employers would think – incorrectly – that he was not trustworthy with

handling the money and accounting at the bar. This would also be extremely embarrassing.

Keeping his job and avoiding embarrassment before his boss and co-workers were major reasons

Mr. Gartly went immediately to court to try to figure out what he could do to immediately stay

the collection before the employers received notices of garnishments, and to move to vacate the

default judgment.

25.    Mr. Gartly lives in the Brooklyn, but Defendants improperly sued him in Queens, where

he did not reside. Defendants' filing and subsequent maintaining of the action in the wrong

---

4 Plaintiff is not alleging that this is a so-called "sewer service" judgment. Plaintiff does not contend that the process server lied about serving process. Plaintiff does not contend that the process server never went the Queens address on the dates alleged and that no one answered the door on those attempts. Plaintiff is not alleging the process server knew or had reason to know that the Queens address was not the actual residence of Mr. Gartly. This is not an instance of a process server contending he served the consumer personally when this was not true, or contending that he served a "co-tenant" when that was not true. Rather, Plaintiff is simply stating that the assertion that the Queens address was the residence of Mr. Gartly in 2008 was ultimately shown to be incorrect.

county created another barrier to challenging promptly the default judgment because of the lengthier travel time to court. Mr. Gartly initially went to the Civil Courthouse in Kings County — where he lives — to try to vacate the default judgment, but he was turned away and told he needed to go to the Civil Court in Queens, where the collection lawsuit was impermissibly filed. Mr. Gartly also had to spend additional time traveling to the Queens Court rather than his local Kings Court —and Defendants made sure to force Mr. Gartly to come back again, and again, and again to attempt to vacate the default judgment on the time barred debt.

26.     On or about March 31, 2017 went to the Kings County Civil Court. With the assistance of the CLARO volunteer attorney program, filed a *pro se* Order to Show Cause ("OSC"). **See Exh B (OSC with proof of mailing).** Mr. Gartly attempted to obtain the court file — and to see the affidavit of service to rebut the specific allegations as to service— but the file was in archives and would take some time to obtain.  In his OSC, Mr. Gartly stated, under oath, that he was never served a copy of the summons and complaint.

27.     Civil Court Judge Terrence C. O'Connor, finding merit to Mr. Gartly's application, signed the Order to Show Cause that day, and ordered Mr. Gartly to serve the same by April 4, 2017.

28.     Mr. Gartly mailed the OSC to Marshal Moses and to Selip on April 3, 2017, and filed proof of the same with the clerk. *See* Exh B **(OSC with proof of mailing).**

29.     In the OSC, the Court ordered Selip to show cause why it should not vacate the default judgment, release all restraints, and allow Mr. Gartly to answer the complaint and/or move to dismiss.  The OSC set a hearing for April 12, 2017.  Importantly, the OSC issued the following injunction to stay all enforcement attempts until the hearing:

> PENDING the hearing on this Order to Show Cause and the entry of an order thereon, **let ALL all proceedings** on the part of the Plaintiff(s), Plaintiff(s) its attorney(s) agents and

any Marshal or Sheriff of the City of New York **for the enforcement of said Judgment be stayed (stopped).**

*See* **Exh B** (emphasis added)

### Selip Opposes OSC and demands "costs and expenses"

30.     On the April 12, 2017 return date for the OSC, Selip handed Mr. Gartly with a copy of its opposition to the OSC.  *See* **Exh C (OSC Opposition)**. The signature by the attorney for Selip on the Opposition was dated April, 7, 2017. *Id*.

31.     Remarkably, Selip made demand in its Opposition for "costs and expenses" for opposing the OSC.  Selip had not basis in law or fact to demand "costs and expenses" from Mr. Gartly. The demand from Selip is particularity galling as Selip attached to its opposition a copy of the complaint which, on its face, demonstrates the suit was time barred.

32.     Not surprisingly, the demand for "costs and expenses" is not tied to anything specific as to Mr. Gartly. Rather, the demand is embedded in the form, boilerplate "WHEREFORE" clause. By inserting as a matter of course a boilerplate demand for "costs and expenses" in its form OSC Opposition, Selip is attempting to intimidate pro se consumers such as Mr. Gartly from pursuing their OSC.  A consumer, least sophisticated or otherwise, seeing a demand for "costs and expenses" may be discouraged from pursuing meritorious OSCs out of fear of having to pay  – in addition to the default judgment – the "costs and expenses" of the Selip and the putative judgment creditor for opposing the OSC. A consumer, least sophisticated or otherwise," may believe the "costs and expenses" demanded may include the attorney's fees for Selip. Therefore, the more the consumer pursued his rights – and the more Selip stubbornly resisted – the more the consumer may be concerned of additional risk of paying mounting attorney's fees of Selip in opposing the OSC.

33.      Selip attached the affidavit of service to its OSC Opposition. This was Mr. Gartly' first

chance to review the affidavit of service that formed the basis for the default judgment. As previously noted, the affidavit of service contends that an address in Queens was the actual place of residence of Mr. Gartly on the date of service in 2008. Therefore, the process server effected service by so-called "nail and mail," affixing a copy of the summons and complaint on the door and mailing a copy to the same address. However, Mr. Gartly did not live at that in Queens in 2008, and indeed not since 2003.

34.     The April 12, 2017 hearing on the OSC was adjourned to May 17, 2017 for Mr. Gartly to file a supplemental affidavit to challenge the specific allegation of place of residence alleged in the affidavit of service. Selip, however, continued to refuse to vacate the default judgment. By its terms, the OSC Stay remained in effect during the adjournment as there was no "entry of an order" on the OSC.

### *Selip slyly seeks to garnish Mr. Gartly's wages and serves information subpoenas in violation of the OSC stay*

35.     Marshal Ronald Moses (the "Marshal") sent an "Income Execution – Notice of Levy" (the "Levy") dated April 18, 2017 to Mr. Gartly's employer, Rose's Bar and Grill, along with an Income Execution signed by Selip and dated March 9, 2017,  *See* **Exh D (Levy & Income Execution).**  The Levy and Income Execution was sent to Mr. Gartly's employer on behalf of and as a direct result of the request of Selip in violation of the March 31, 2017 OSC Stay.

36.     As previously noted, Mr. Gartly mailed the OSC to the Marshal and Selip on April 3, 2017, with proof of mailing. *See* **Exh. B (OSC with proof of mailing)**.  Indeed, Selip had possession of the OSC no later April 7, 2017 because that is the date of the signature of the attorney for Selip in its Opposition to Mr. Gartly's OSC. *See* **Exh C (Selip OSC Opposition)**. Indeed, Selip was at the April 12, 2017 opposing the OSC, six days before Selip had the Marshal issue the April 18, 2017 Levy and Income Execution.

37.     When Mr. Gartly found out from his employer that they had received the Levy and Income Execution he was shocked, scared, and embarrassed, Mr. Gartly is a manager at a bar, and is in charge of handling significant amounts of cash. He is entrusted with "closing," and being entrusted with the proceeds for the evening. Mr. Gartly was afraid he would lose his job because he was afraid his employers would think – incorrectly – that he was not trustworthy with handling the money and accounting at the bar. This would also be extremely embarrassing. Keeping his job and avoiding embarrassment before his boss and co-workers were major reasons Mr. Gartly went immediately to court.  Yet Selip disregarded the OSC Stay, and put Mr. Gartly's job at risk.

38.     On May 5, 2017 Selip, using guile and deception, again violated the OSC stay.  Selip mailed Information Subpoenas *dated* March 6, 2017 with cover letters of the same date to Mr. Gartly's two employers. However, the Information Subpoenas were in fact *mailed* on May 5, 2017, as can be seen on the postage meter of an envelope that contained the documents to one of the employers. *See* **Exh E (Information Subpoenas and envelope).** Mr. Gartly's employers received the Information Subpoenas on or about May 5, 2017.

39.     The subpoenas themselves contained false threats designed to put the maximum pressure on Mr. Gartly to pay by putting maximum pressure on Mr. Gartly's employer. The subpoenas propounded questions as to Mr. Gartly, his employment, and his wages, and demanded a sworn response within seven days after receipt of the subpoena. Importantly, the threatens, "failure to comply with this subpoena is punishable as a contempt of court." However, CPLR 5224(a)(3) requires that, if an information subpoena is mailed, it must be mailed "by registered or certified mail, return receipt requested."  As can be seen from the envelope (Exh. E), the information subpoenas were mailed by regular first class mail. Therefore the information subpoenas were not

enforceable. As such, Selip's threat of contempt if timely answers are not received is a threat to take an act prohibited by law, and violates the FDCPA, 15 U.S.C. § 1692e(5).   While the information subpoena was mailed to the employer the target of the subpoena was Mr. Gartly: the information subpoena was sent in connection with attempting to collect money from Mr. Gartly.

40.     Apparently Selip wants to be able to pressure consumers to make payments through (false) threats of contempt to the consumer's employer, but does not want to pay the $4.00 more it would require to make that threat enforceable.  Selip is a debt collection mill that collects putative judgments on a huge volume. Selip's collections practice is largely standardized and mechanical. If Selip is sending out information subpoenas threatening contempt when not allowed by law (given that the notice is sent on via regular mail), it is certainly plausible (to say the least) that this is a pattern and practice of Selip.

41.     Again, Selip knew exactly where to apply the maximum pressure on Mr. Gartly: embarrassing him in front of his employers, and threatening his job. Again Mr. Gartly felt humiliated in the eyes of his employers. Moreover, Mr. Gartly would need to assure his employers that they would not be held in contempt.

### Gartly serves a Supplemental Affidavit with overwhelming proof that he did not reside in Queens

42.     Mr. Gartly executed a Supplemental Affidavit in support of his OSC after being able to review the affidavit of service Selip attached to its OSC Opposition. The affidavit of service was based on the assertion the Mr. Gartly's pace of residence was in Queens in February 2008. Mr. Gartly finally had a specific factual basis in the affidavit of service to rebut.

43.     Mr. Gartly filed the Supplemental Affidavit with a proof mailing with a May 2, 2017 proof of mailing. *See* **Exh. F (Supplemental Affidavit with proof of mailing)**.

44.     In his supplemental affidavit, Mr. Gartly swore he did not reside at the address of alleged

service since 2003. *Id*.

45.      In support, Mr. Gartly attached certified records from the NY Department of Motor Vehicles that Mr. Gartly lived in Brooklyn, not the Queens address where service was alleged. There is also a historical listing of addresses going back many years, not one address lists a Queens address. *Id*.

46.      In addition, Mr. Gartly attached a redacted copy of the first page of his 2007 and 2008 tax returns showing his address in the Bronx. *Id*.

**Despite having overwhelming evidence, Selip forced Gartly to come to court three additional times in hopes he would default**

47.      Given this overwhelming evidence, Selip had no good faith basis to continue to oppose his OSC, but still forced him to come back to court on three additional occasions to attempt to vacate the default judgment. Given Mr. Gartly's overwhelming evidence, Selip continued to oppose the OSC in hopes that Mr. Gartly would miss one of the hearings and default, or would be so worn down from continuing to have to appear in court and being embarrassed in front of his employer that he would pay Selip something to finally put the matter behind him.

48.      Mr. Gartly travelled to Queens County Civil Court again on the May 17, 2017 return date for the OSC. The hearing was held and decision was reserved. Again, Selip continued to oppose vacating the default judgment.

49.      Mr. Gartly continued to be embarrassed by having to ask his employer every payroll whether Selip had attempted to garnish wages despite the OSC Stay, just as it had done when it had the Marshal send to June 18, 2017 Levy and Garnishment. This was degrading. Each time he did so he was again afraid of what his employer might think of him. Since he dealt with finances and dealt with large sums of cash in his job, he wondered if his employment might be in jeopardy.

50.     On June 12, 2017, Mr. Gartly sent Selip a letter pleading that, within 7 days of the date of the letter, Selip provide written confirmation that it was withdrawing its opposition to the OSC, to vacate the default judgment, and to discontinue the action. *See* **Exh. G (Gartly June 12 letter)**. With the letter he included the previously served Supplemental Affidavit and supporting evidence, that is, the DMV records and the first pages of his 2007 and 2008 tax returns showing his address was in the Bronx at that time.

51.     In addition, Mr. Gartly's June 12, 2017 letter specifically pointed out that the complaint itself demonstrated that the collection lawsuit was for a time-barred debt. *Id*. The letter noted that the complaint showed that the alleged debt was in default for more than 3 years, and that the suit for a Discover Bank debt was governed by a 3 year statute of limitations. *Id*.

52.     Despite receiving the June 12, 2017 letter, Selip steadfastly continued to refuse to drop its opposition to the OSC. Selip ignored the June 12, 2017 letter, and the overwhelming evidence attached to the letter, forcing Mr. Gartly to travel to Queens yet again in order to vacate the sewer service default judgment. Selip continued to oppose the OSC in hopes that Mr. Gartly would miss one of the hearings and default, or would be so worn down from continuing to have to appear in court and being embarrassed in front of his employer that he would pay Selip something to finally put the matter behind him.

53.     On June 26, 2017, Civil Court Judge Laurentina McKetney Butler issued an opinion that Mr. Gartly had rebutted the affidavit of service and set the matter for a traverse hearing on July 20, 2017. *See* **Exh. H (June 26 order)**.

54.     Selip knew it would not be producing the process server at the July 20, 2017 hearing but yet would not agree the request of Mr. Gartly in his June 12, 2017 letter that Selip provide written documentation that it was vacating the default judgment and discontinuing the action.

Selip's apparent practice is to not have the process server at issue, Steeve Louis, appear at traverse hearings. *See* **Exh I (NY DCA Traverse Report Forms).**

55.     Instead, Selip waited to see if Mr. Gartly – like most consumers who have to miss work, or arrange for and pay for child care, or incur other financial hardships in having to repeatedly go to court – would miss the July 20, 2017 hearing. In that event, Mr. Gartly would lose by default and Selip could go back to seeking to garnish Mr. Gartly's wages.

56.     A traverse hearing was held on July 20, 2017. This was the ***fourth*** time Mr. Gartly was forced to travel to a foreign venue in order to defend against the collection lawsuit. At the conclusion of the traverse hearing the Court vacated the sewer service default judgment and discontinued the action.  *See* **Exh J (July 20 order vacating judgment and discontinuing action).**

57.     Selip engaged in unfair and unconscionable debt collection conduct by refusing to withdraw its baseless objection after receiving the April 12, 2017 supplemental affidavit, which proved that Selip's opposition was meritless.

58.     By forcing Mr. Gartly to appear twice more at Queens County Civil Court after serving the supplemental affidavit, Selip increased the likelihood that Mr. Gartly would mistakenly default on the OSC. This would allow Discover to continue executing on the default judgment in order to collect the time-barred putative debt.

## COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AS TO SELIP )

59.     Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged herein.

60.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

61.     Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil  actions brought by others.").

62.     The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

63.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

64.     Defendant Selip and the individually named Selip Defendants are law firms engaged in the business of collecting debts by filing thousands of collection lawsuits on behalf of putative creditors or debt buyers; by making thousands of collection phone calls; and by sending out thousands of collection letters. Defendant regularly collects consumer debts alleged to be due to

another, and that is its primary purpose. Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C. §1692a(6).

65.    CPS and Mr. Louis are debt collectors because, in connection with the collection of debts, they regularly execute and file, or cause to be executed and filed, false affidavits of service.

66.    By their conduct detailed in the above statement of facts, Defendants materially violated 15 U.S.C. § 1692e and 1692f.  By way of example, the Selip Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; and using unfair or unconscionable means.

**COUNT 2: NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.*
(AS TO SELIP AND DISCOVER BANK )**

67.    Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged herein.

68.    New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

69.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An

individual may also be awarded punitive damages.

70.     As enumerated in the Statement of Facts, Defendants violated N.Y. Gen. Bus. Law § 349

*et seq.* by using deceptive acts and practices in the conduct of their businesses that have broad

impact on consumers at large.

71.     Said Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

72.     As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*,

Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive

relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and

attorney's fees.

### COUNT 3: NY JUDICIARY LAW § 487 (AS TO SELIP)

73.     New York Judiciary Law § 487 creates a private right of action against an attorney or

counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with

intent to deceive the court or any party;" or "willfully receives any money or allowance for or on

account of any money which he has not laid out, or becomes answerable for."

74.     As enumerated in the Statement of Facts, Selip violated Judiciary Law § 487.

75.     Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for

Selip's violations of N.Y. Judiciary Law § 487, and Plaintiff so seeks.

### JURY DEMAND.

59.     Plaintiff demands a trial by jury.

### PRAYER

60.     WHEREFORE, Plaintiff requests the following relief:

  a.     A declaration that Defendants have committed the violations of law alleged in this

     action;

  b.     An order enjoining and directing Defendants to cease violating G.B.L. § 349 *et seq.*;

c.   Actual damages, treble, exemplary, and punitive damages;

d.   Statutory damages under 15 U.S.C. § 1692k against Selip;

e.   Statutory, treble, and punitive damages against Selip and Discovery Bank pursuant to GBL 349;

f.   An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k and GBL 349;

g.   Prejudgment and post judgment interest as allowed by law;

h.   All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
        March 24, 2018

Respectfully submitted,


/s/ *Ahmad Keshavarz*


By: _____
Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809