UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| James Gartly, | 1:18-CV-1806 (ARR) (VMS) |
| *Plaintiff*, | |
| – against – | **Not for Publication** |
| Selip & Stylianou LLP, *et al.*, | |
| *Defendants*. | **Opinion & Order** |

ROSS, United States District Judge:

This case comes before me on a motion to compel arbitration. In this lawsuit, the plaintiff, an individual, is seeking relief against the defendants, a credit-card-issuing bank and its attorneys, for alleged misdeeds in the attempted collection of a credit-card debt that the plaintiff purportedly owed to the bank. The defendants have presented unrebutted evidence that the plaintiff's credit-card agreement contained a broad arbitration clause, and none of the plaintiff's arguments seriously call the applicability of that clause into question. Hence, I must compel arbitration.

## BACKGROUND[1]

In October 1999, the plaintiff was issued a credit card by defendant Discover Bank, then doing business under a different name. Reams Aff. ¶ 10, ECF No. 29. The bank mailed the credit card to the plaintiff, along with a copy of the agreement governing the credit-card account. *Id.* ¶ 11; *see also* Cardmember Agreement, ECF No. 29-2. Under the terms of the

---

[1] Much of the following is derived from an unrebutted affidavit submitted by the defendants (Reams Aff., ECF No. 29). For reasons set forth *infra*, I reject the plaintiff's argument that the statements in the affidavit, as well as the exhibits attached thereto, are inadmissible hearsay (*see* Pl.'s Br. 12–13, ECF No. 30).

1

agreement, either the plaintiff's use of the card or his failure to cancel the account within thirty days would constitute acceptance of the agreement. *See* Cardmember Agreement 2.

The agreement also provided that either the bank or the plaintiff could "elect to resolve" by binding arbitration "any past, present or future claim or dispute" between the parties "arising from or relating to" the credit-card account. *Id.* at 8. The effect of such an election would be that neither party would "have the right to litigate that claim in court or to have a jury trial on that claim." *Id.* (emphasis omitted). The agreement provided that the bank's "rights and obligations under this arbitration provision . . . will also inure to the benefit of any third party named as a co-defendant with [the bank] . . . in a claim which is subject to this arbitration provision." *Id.* at 9. Finally, the agreement stated that the "arbitration provision shall survive termination of [the] Account as well as . . . any legal proceedings by [the bank] to collect a debt owed by [the cardholder]." *Id.* at 9–10.

The defendants claim that after the account was opened, the bank sent the plaintiff a number of amendments to the agreement. *See* Reams Aff. ¶ 13. The defendants aver, however, that none of these amendments affected the agreement's above-quoted arbitration provision. *See id.*

There is no evidence that the plaintiff opted out of any of the terms and conditions in the agreement, or in any subsequent amendment thereto. *See id.* ¶¶ 16, 20. And it does appear that he used the card: By November 2004, when the bank charged off the plaintiff's account,[2] the balance he owed to the bank was $3023.98. *Id.* ¶ 18.

In February 2008, the bank, through defendant Selip & Stylianou LLP, filed suit against the plaintiff in Queens County Civil Court to collect the debt. Compl. ¶ 7, ECF No. 1; Answer

---

[2] "A 'charge off' occurs when a creditor determines it is unlikely to collect a debt and closes the account to further use." *Hamilton v. Midland Funding LLC*, No. 2:14-cv-02008-AKK, 2017 WL 394839, at *2 n.1 (N.D. Ala. Jan. 30, 2017).

¶ 7, ECF No. 17. The plaintiff alleges that that lawsuit was improper (*see, e.g.*, Compl. ¶¶ 8, 15), which brings us to the present action.

The plaintiff filed this lawsuit on March 24, 2018, alleging violations of the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692–1692p) and New York state law. *See* Compl. ¶¶ 59–75. The defendants answered the complaint on June 11, 2018. *See* Answer. The defendants now move this court to dismiss the case and to compel the plaintiff to pursue his claims through arbitration instead. Mot. 1, ECF No. 27.

## DISCUSSION

The defendants' argument is simple: the plaintiff's claims are covered by a binding arbitration provision in his credit-card agreement with the bank, and therefore I must dismiss the case in favor of arbitration. *See* Defs.' Br. 1–2, ECF No. 28. The plaintiff attempts to resist this conclusion on two grounds: As a threshold matter, he argues that the affidavit on which the defendants' motion relies should be excluded as hearsay. *See* Pl.'s Br. 12–13, ECF No. 30. And failing that, he argues that the defendants still have not brought forward sufficient proof that he ever accepted the agreement to which the defendants purport to bind him. *See id.* at 5. Both arguments ultimately fail.

**A.    The defendants' affidavit is properly admitted under the business-records exception to the rule against hearsay.**

Subject to certain requirements, a record "kept in the course of a regularly conducted activity of a business" is not excluded by the rule against hearsay. Fed. R. Evid. 803(6)(B). When such a record otherwise qualifies under the rule, it may be admitted as long as "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

Under the rule, "the proponent must establish that it was the business practice of the recording entity to obtain [the recorded] information from persons with personal knowledge

3

and the business practice of the proponent to maintain the records produced by the recording entity." *United States v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2011) (quoting *United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996)). That means that "[e]ven if the [proffered] document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity." *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992).

Once the proponent has made the requisite showing, the burden is on the opponent to demonstrate "a lack of trustworthiness." Fed. R. Evid. 803(6)(E). "Showing inaccuracies that are important or numerous is one way to prove untrustworthiness, but the burden is best described as one of showing the record is not to be trusted, which usually involves proof . . . highlighting weaknesses in the method of preparation or raising doubt about motivation." 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:83 (4th ed. 2013); *see also United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) ("The purpose of the rule is to ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'" (alteration in original) (quoting *United States v. Freidin*, 849 F.2d 716, 719 (2d Cir. 1988))).

"Because of the general trustworthiness of regularly kept records and the need for such evidence in many cases, the business records exception has been construed generously in favor of admissibility." *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 391 (Fed. Cir. 1996); *accord Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 421 (S.D.N.Y. 2011). Indeed, the Second Circuit "ha[s] stated that Rule 803(6) 'favors the admission of evidence rather than its exclusion if it has any probative value at all.'" *Kaiser*, 609 F.3d at 574 (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000)). "Generally, objections that an exhibit may contain inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence." *Am.*

*Equities Grp., Inc. v. Ahava Dairy Prods. Corp.*, No. 01 Civ.5207(RWS), 2004 WL 870260, at *11 (S.D.N.Y. Apr. 23, 2004) (quoting *United States v. Scholl*, 166 F.3d 964, 978 (9th Cir. 1999)).

Finally, "the sufficiency of the foundation evidence must be assessed in light of the nature of the documents at issue." *Conoco*, 99 F.3d at 392. "[D]ocuments that are standard records of the type regularly maintained by firms in a particular industry may require less by way of foundation testimony than less conventional documents proffered for admission as business records." *Id.*

Here, the defendants' affiant, "an employee of DPI, a wholly-owned subsidiary and servicing affiliate of credit card accounts owned by Discover Bank" (Reams Aff. ¶ 2), has declared that she is "a custodian of records for Discover" (*id.* ¶ 3), that the "business records relating to the [bank's] customer credit card accounts" are "kept by DPI in the regular course of its business" (*id.* ¶ 7), that "it is the regular business practice of DPI to keep such records and to do so in a consistent manner" (*id.*), and that the records "were made by employees or representatives with personal knowledge of the acts, events, conditions, or opinions recorded in the memoranda or records . . . at or near the time of the acts and/or events recorded, or reasonably soon thereafter" (*id.*). And she declares that she "ha[s] personally reviewed Mr. John [sic] Gartly's account history, as well as Discover's records relating to his account." *Id.* ¶ 6. The defendants have thus met their burden under Rule 803(6). *See Langford*, 647 F.3d at 1327 (observing that testimony by custodian of records "that the[ ] records were kept in the ordinary course of business, that it was the ordinary course of [the custodian's] business to make and keep such records, [and] that the records were made on or about the time of the transactions reflected in the records'" was "proper foundation" (quoting *United States v. Atchley*, 699 F.2d 1055, 1058 (11th Cir. 1983))); *see also SEC v. Jasper*, 678 F.3d 1116, 1123 (9th Cir. 2012) ("[T]he [proffered business record] assuredly was 'prepared by people with personal

5

knowledge, at or near the time of the events, who were just doing their ordinary jobs.'" (quoting brief)).

The plaintiff does not refute any of the above but instead notes that the affiant has also declared that the business records proffered by the defendants "are true and correct copies of business records *created* and maintained by DPI." Reams Aff. ¶ 8 (emphasis added); *see* Pl.'s Br. 12. These records—some of which date back to 1999 (*see* Reams Aff. ¶¶ 10–11)—could not all have been *created* by DPI, the plaintiff observes, because DPI did not exist before 2004 (*see* Pl.'s Br. 13).

The plaintiff is undoubtedly correct that the proffered business records were not in fact created by DPI. As the defendants respond, however, DPI, "a wholly-owned subsidiary of Discover," "[o]bviously . . . has access to the prior records of its parent company." Defs.' Reply Br. 6, ECF No. 32. The defendants admit that the language in the declaration was "inartful" but otherwise argue that DPI "is, essentially, an arm of Discover, which has always maintained the records." *Id.* at 7.

The defendants' counsel would do well to avoid "boilerplate, conclusory statements that simply parrot the elements of the business record exception to the hearsay rule" (*Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 545–46 (D. Md. 2007)). Not only is "factual specificity" useful for the court to make informed rulings on admissibility (*id.* at 545), but abandoning conclusory boilerplate will also help prevent the submission of sworn statements that are technically false, as seems to have happened here.

Nevertheless, I find that the plaintiff has failed to demonstrate that the affidavit and its exhibits are too untrustworthy to be admissible. *Cf. Jean v. Cavalry SPV I, LLC*, No. 1:15-cv-01691-TCB-AJB, 2016 WL 6661170, at *4 (N.D. Ga. Jan. 25, 2016) (rejecting argument that "statements made in the affidavit have been shown to be patently false, making the entire

affidavit untrustworthy"), *adopted*, 2016 WL 6534453 (N.D. Ga. Feb. 17, 2016). The sloppy drafting of the affidavit undermines neither the trustworthiness of the underlying business records nor the specific factual assertions about them made by the affiant. The plaintiff offers me no reason to suspect that the proffered credit-card application and cardmember agreement are anything but genuine, or that the bank's records with respect to the plaintiff should not be believed. I thus decline to exclude the defendants' evidence as hearsay, and I proceed to the merits of the defendants' motion.

**B.     The plaintiff is bound by the arbitration provision in the credit-card agreement.**

"In the context of motions to compel arbitration brought under the Federal Arbitration Act, the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted). Hence, I must "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).

"[T]he moving party has the initial burden of showing that an agreement to arbitrate exists" (*Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 395 (E.D.N.Y. 2013) (citing *Roller v. Centronics Corp.*, No. 87 CIV. 5715 (JFK), 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989))), but once that showing is made, "[t]he party resisting arbitration bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass the claims at issue" (*Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013)).

   *1. The plaintiff received and bound himself to the original credit-card agreement.*

The defendants have presented evidence that in 1999 the bank sent the plaintiff, in a single mailing, both a credit-card agreement containing a binding arbitration provision and the associated credit card. *See* Reams Aff. ¶¶ 11–12, 15; Cardmember Agreement 8–10. This

uncontroverted evidence suffices to establish that the plaintiff received the agreement. *See, e.g.*, *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985) ("[U]nder New York law, personal knowledge is required only to establish regular office procedure, not the particular mailing. Here, the presence of such proof establishes prima facie evidence of the mailing and creates a rebuttable presumption as to receipt.").[3] And the plaintiff, for his part, does not deny receipt. *See* Pl.'s Br. 7 (referring to agreement as "the delivered 1999 Cardholder Agreement").

The defendants also present evidence that the plaintiff used the credit card. *See* Reams Aff. ¶ 18 ("At the time of charge-off the balance on the Account was $3,023.98, indicating Mr. Gartly's use of the Account credit card."). The plaintiff objects that "Defendants have produced no billing statements or other evidence establishing use of the card." Pl.'s Br. 10. And he observes that the defendants' affidavit fails to "contend—much less prove—any dates where Mr. Gartly was alleged to have used the putative credit card." *Id.* Although the defendants' failure to present more specific facts is lamentable, the record evidence indicates that the plaintiff received the credit card and the agreement in the same mailing. *See* Reams Aff. ¶¶ 11–12. No matter when the plaintiff actually used the credit card, then, it was certainly not *before* he received the agreement. That use thus constituted acceptance of the agreement. *See* Cardmember Agreement 2 ("The use of your Account or a Card by you or an Authorized User . . . means you accept this Agreement."); *see also Mangahas v. Barclays Bank Del.*, No. SACV

---

[3] The defendants assert that New York law applies to the question of contract formation in this case. *See* Defs.' Br. 13 n.3 (citing *Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539, at *6 (E.D.N.Y. Mar. 9, 2018)). (The plaintiff does not address choice of law in his briefing.) In *Biggs*, however, the court ruled that New York law applied because "plaintiff received the Account Agreement and account statements at her address of record in New York." 2018 WL 1225539, at *6. In this case, by contrast, the evidence is that the plaintiff received the agreement at his former address in California. *See* Reams Aff. ¶ 11; *see also* Application, ECF No. 29-1. Although the plaintiff apparently moved to New York subsequently (*see* Compl. ¶ 3), there is no evidence in the record regarding when that move occurred or where the plaintiff was living while his credit-card account was active. Accordingly, it seems equally if not more likely that California law applies instead. It makes no difference, though, as the same presumption of receipt exists in California. *See Mahon v. Credit Bureau of Placer Cty., Inc.*, 171 F.3d 1197, 1201–02 (9th Cir. 1999).

16-00093 JVS (JCGx), 2016 WL 11002179, at *2 (C.D. Cal. May 9, 2016) ("[The plaintiff's] use of the credit card constituted assent to the terms of the cardmember agreement, including its arbitration provision." (citing *Serafin v. Balco Props. Ltd.*, 185 Cal. Rptr. 3d 151, 156 (Ct. App. 2015)); *Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715(PKC), 2013 WL 6017444, at *6 (S.D.N.Y. Nov. 13, 2013) ("[T]he use of a credit card constitutes acceptance of an offer of credit . . . ."); Pl.'s Br. 9 ("[A] credit card's use demonstrates acceptance . . . .").

   *2. The plaintiff's receipt or acceptance of the amendments to the credit-card agreement are irrelevant.*

The plaintiff tries to resist the conclusion that he accepted the agreement by pointing to subsequent amendments to the agreement that the defendants claim were made. *Compare* Reams Aff. ¶ 19 ("At the time of charge-off, . . . the effective contract governing the Account . . . [was] the same as the Card Agreement [sent in 1999], except [for] some amendments that were mailed to Mr. Gartly separately while his Account was open."), *with* Pl.'s Br. 6 ("These 'amendments,' allegedly mailed at unspecified dates between 1999 and 2000, are not provided."). The crux of the plaintiff's argument is that I cannot find that this amended agreement governs "because Defendants have failed to establish that [the *amended* agreement] was sent to Plaintiff and . . . that Mr. Gartly used the card after it was delivered" (Pl.'s Br. 8). In other words, because the defendants offer no evidence of either the dates when the amendments were allegedly mailed or the dates when the plaintiff used the credit card, there is no basis for me to conclude that the plaintiff ever assented to the amended agreement. *See id.* at 11.

That much is true, but as the defendants rightly observe, this argument is a "red herring" (Defs.' Reply Br. 5). The defendants' contention—undisputed by the plaintiff—is that the purported amendments "did not affect any of the Card Agreement provisions" at issue in this lawsuit, "including the 'ARBITRATION OF DISPUTES' section." Reams Aff.

9

¶¶ 13, 19. Accordingly, the defendants' "failure to prove mailing or receipt of the [amendments] is of no moment." *Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907 (VEC), 2016 WL 7046820, at *4 (S.D.N.Y. Dec. 2, 2016). "[E]ven if Plaintiff never received the [amendments], []he continues to be bound by the arbitration provision in the [original] Agreement. If [the bank] never mailed [an] updated agreement to Plaintiff, there is no agreement to supersede the [original] Agreement, and Plaintiff continues to be bound by its terms." *Id.*

### 3. *The arbitration provision applies to this dispute.*

The agreement states that mandatory arbitration may be elected by either party with respect to any "dispute . . . arising from or relating to [the] Account." Cardmember Agreement 8. And it provides that the bank's "rights and obligations under this arbitration provision . . . will also inure to the benefit of any third party named as a co-defendant with [the bank] . . . in a claim which is subject to this arbitration provision." *Id.* at 9. This lawsuit is based on the defendants' attempts to collect a debt allegedly owed by the plaintiff on the credit-card account. The dispute thus "aris[es] from or relat[es] to" the account (*id.* at 8); indeed, the plaintiff offers no argument to the contrary. *Cf. Wolin v. Midland Credit Mgmt., Inc.*, No. CV 15-6996, 2017 WL 3671176, at *4 (E.D.N.Y. Aug. 24, 2017) ("As [plaintiff's] claim clearly arises out of defendants' efforts to recover amounts owed as a result of charges made by him on the credit card, that claim is covered by the arbitration provision."). I must therefore compel arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

## CONCLUSION

For the foregoing reasons, the defendants' motion will be granted—at least in part.

The defendants' motion asks me to "dismiss[] this action and compel[] Plaintiff to submit his claims to individual arbitration." Mot. 1. But "[w]hen compelling arbitration, the

Court is required to grant a stay, rather than dismiss the case, if either party so requests." *Abreu v. Fairway Mkt. LLC*, No. 17-CV-9532 (VEC), 2018 WL 3579107, at *3 (S.D.N.Y. July 24, 2018); *see Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We . . . consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested."); *cf. Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (ruling that district court wasn't required to stay proceedings where stay wasn't requested), *cert. denied*, 137 S. Ct. 618 (2017). And "most of the district courts in our Circuit . . . hesitate[] to dismiss arbitrable claims, even where neither side has expressly requested a stay." *Harris v. TD Ameritrade Inc.*, ___ F. Supp. 3d ____, No. 17 CV 6033-LTS-BCM, 2018 WL 4565145, at *2 n.15 (S.D.N.Y. Sept. 24, 2018). Accordingly, I "will delay dismissal of this case . . . to give the parties the opportunity to make such a request if either so chooses." *Abreu*, 2018 WL 3579107, at *3. The case will be dismissed on November 9, 2018, unless a request for a stay is received by the court before then.[4]

---

[4] This delay should not be understood as an acquiescence to the plaintiff's request that I "delay issuing an order sending the case to arbitration . . . [to] give Plaintiff the opportunity [to] consider whether to move to amend his complaint to dismiss without prejudice his claims against Discover Bank" so as to avoid arbitration (Pl.'s Br. 13). Although the issue has not been briefed, and I have not prejudged it, Selip & Stylianou appears to have a colorable argument that the plaintiff would be estopped from avoiding arbitration of his claims against it, even if the bank were dismissed from the proceedings. *See Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008) (explaining that estoppel may be justified where "dispute was intertwined with the contract providing for arbitration" and "relationship among the parties . . . made it inequitable for [the party opposing arbitration] to refuse to arbitrate on the ground that [he] had made no agreement with [the noncontracting party]"); *see also Zambrana*, 2016 WL 7046820, at *6 (allowing debt-collecting law firm, as agent of debt owner, to enforce arbitration agreement against credit-card debtor). What is more, as a simple matter of contract interpretation, it is far from clear that dismissing the bank from the lawsuit—particularly at this late date, after a motion to compel arbitration has been filed, fully briefed, and decided—would strip Selip & Stylianou of its rights as a "third party named as a co-defendant with [the bank] . . . in a claim which is subject to th[e] arbitration provision" (Cardmember Agreement 9). *Cf. Santana v. A.L. Recovery, LLC*, No. 18-16, 2018 WL 3912830, at *9–10 (W.D. Pa. Aug. 16, 2018) (compelling arbitration in otherwise similar context where contracting defendant had been dismissed from lawsuit *before* motion to compel arbitration was filed). I trust that the plaintiff will consider his options carefully.

11

So ordered.

                                                                         ____/s/_____
                                                                         Allyne R. Ross
                                                                         United States District Judge

Dated:       November 2, 2018
                  Brooklyn, New York